KLINGENSMITH, J.,
concurring specially.
I believe the majority reached the right result in this case, albeit for different reasons.
While the majority bases its conclusion in part on the lack of any authority applying the defense of “justifiable use of force *468 in defense of property” where the charged offense is false imprisonment, it is just as clear that there are no decisions prohibiting its use in that context either.
Under Florida law, the term “false imprisonment” is defined as “forcibly, by threat, or secretly confining, abducting, imprisoning, or restraining another person without lawful authority and against her or his will.” § 787.02(l)(a), Fla. Stat. (2013) (emphasis added). Indeed, one can conceive of numerous real-life situations where an individual should be allowed to assert such a defense if defending against that charge. This is especially true in cases where the temporary detention of an alleged wrongdoer is necessary to guarantee his. presence, and that of the stolen property, at the scene for law enforcement’s intervention. Consequently, any temporary detention of a thief even for a legitimate purpose could subject the owner to a false imprisonment charge without the ability to proffer a defense of property theory. The only thing that would prevent such an occurrence (or perhaps enable its realization) is the exercise of prosecutorial discretion.
Generally, as the majority points out, an instruction on the defense theory should be given where there is evidence to support it. See Wright v. State 705 So.2d 102, 104 (Fla. 4th DCA 1998). However, the instruction sought by Ulysse was inapplicable to the facts of this case. Here, the denial of the requested instruction was proper because the theory of the defense of property is inapplicable where a defendant seeks to recover money given voluntarily to another in furtherance of an illegal transaction. See State v. Beckett, No. 09-09-1587, 2014 WL 1419283, at *3 (NJ.Super.Ct.App.Div. Apr. 15, 2014) (finding that the trial judge did not err by failing to provide a jury instruction on the use of lawful force to protect property where the facts of the case as described by defendant did not “jump[ ] off the page as that of a victim who used justifiable force in defense of property,” but “[r]ather ... reflected] the use of force ... [was] for the purpose of enforcing an illegal bargain”).
Under section 776.031, in order for the use of non-deadly force to be justifiable in defense of property, the person utilizing non-deadly force must reasonably believe:
[T]hat such conduct is necessary to prevent or terminate the other’s trespass on, or other tortious or criminal interference with, either real property other than a dwelling or personal .property, lawfully in his or her possession or in the possession of another who is a member of his or her immediate family or household or of a person whose property he or she has a legal duty to protect.
§ 776.031(1), Fla. Stat. (2013).
The scenario in this case is very similar to the situation described in Beckett. As in Beckett, the facts of this case demonstrate Ulysse impermissibly used force in the course of an illegal transaction. Beckett, 2014 WL 1419283, at *3. Under Ulysse’s theory of defense, he willingly handed his money over to the victim in order to purchase drugs, and the victim then refused to return it. Because the money was tendered in furtherance of committing a crime, Ulysse no longer had any enforceable right to retrieve it from the victim. Accordingly, the justifiable use of force instruction was not supported by the theory of defense. See id. As such, an instruction on the defense of property likely would have been misleading or confusing to the jurors.
Consequently, under these facts, I agree that the trial court properly rejected the requested instruction.